IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARTHA CECILIA MARES, | § | |
| | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION H-05-3508 |
| | § | |
| FEDERAL BUREAU OF PRISONS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM ON DISMISSAL**

Petitioner, Martha Cecilia Mares, brings this action seeking habeas corpus relief under 28 U.S.C. § 2241. The Petitioner is presently in the custody of the Federal Bureau of Prisons (BOP) serving a sentence for a federal conviction. She is incarcerated in the Federal Prison Camp in Bryan, Texas.

**I. BACKGROUND AND CLAIMS**

Petitioner's assertions and claims follow. She was convicted on her guilty plea. The district court made a "strong" recommendation that she participate in the Intensive Confinement Center (ICC) Program, also known as the shock incarceration or federal boot camp program. Petitioner claims the program is a sentencing benefit which would have reduced her incarceration. After Petitioner was designated for and accepted into the ICC Program, the BOP cancelled the program. The BOP cancelled the ICC program without notice based on budgetary concerns. Petitioner has remained in the

general prison population.

Petitioner claims this cancellation without notice violated the notice-and-comment requirements for agency rulemaking under the Administrative Procedure Act (APA), 5 U.S.C. § 553, and the congressional mandate in the governing statute. She also claims the cancellation violated the Due Process Clause because the court sentenced her based on misinformation and the cancellation violated the *Ex Post Facto* Clause. Petitioner requests that this Court order the BOP to provide the sentencing benefit of the ICC Program, or a similar benefit such as a halfway house placement or home confinement.

The boot camp program was authorized by statute in 1990. 18 U.S.C. § 4046. Congress passed a statute which provided that the Bureau of Prisons "may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30 months." *Id*. Successful completion of the boot camp program could entitle an inmate to early release consideration. 28 C.F.R. §§ 524.32. An inmate who successfully completed the institution-based component of the program ordinarily would have been eligible to serve the remainder of his sentence in a community-based program, and if successful there and had a period of supervised release to follow, would have been eligible for up to a six-month reduction in their sentence. 28 C.F.R. § 524.32(d).

## II. THE APA AND THE CONGRESSIONAL MANDATE

The APA says a general notice of a proposed rule making must be published and interested persons must be allowed to comment on the proposed rule making. 5 U.S.C. § 553. Failure to comply with the notice and comment provision of the APA invalidates a rule covered by the APA. *National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs*, 260 F.3d 1365, 1375 (Fed. Cir. 2001). However, the BOP's decision to end the ICC Program is not a rulemaking decision covered by the APA. The notice by publication requirement does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n. 31 (1979) (citation omitted).

The BOP shut down the program because of budgetary constraints and its conclusion that the program did not reduce recidivism. *U.S.A. v. McClean*, 2005 WL 2371990, *1 (D.Or. 2005). Although Congress authorized funding, it did not appropriate funds specifically for the ICC Program. *Castellini v. Lappin*, 365 F.Supp.2d 197, 199 (D.Mass. 2005). The BOP funded the program with lump-sum

congressional appropriations. *U.S.A. v. Serrato*, 2005 WL 1661831, *1 (D.Or. 2005). The BOP's cancellation of the program is a general statement of BOP policy. *Lincoln*, 508 U.S. at 197 ("Whatever else may be considered a 'general statemen[t] of policy,' the term surely includes an announcement like the one before us, that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation."). Therefore, the program-termination decision is exempt from the notice and comment requirement as a general statement of policy under 5 U.S.C. § 553(b)(A) and is not invalid under the APA. Alternatively, cancellation of the program is exempted from the APA as a rule of agency organization. 5 U.S.C. § 553(b)(A); *Lincoln*, 508 U.S. at 197.

Petitioner argues that because Congress expressly established, authorized, and funded the program, the BOP cannot dissolve it without a Congressional mandate. The statute Congress enacted states: "The BOP *may* place in a shock incarceration program...." 18 U.S.C. § 4046(a) (emphasis added). As stated above, Congress did not appropriate specific funds for the Program, and the BOP funded the program from a lump-sum congressional appropriation. "Congress intended to authorize the BOP to operate a boot camp program but did intend to require operation of such a program." *Castellini*, 365 F.Supp.2d at 202. Because Congress did not make a specific appropriation for the program, the BOP did not violate the enabling statute. *Lincoln*,

4

508 U.S. at 192-93.

### III. THE DUE PROCESS CLAUSE

Petitioner claims that eliminating the sentencing benefit of the ICC Program is a due process deprivation because her sentence was based on misinformation. Petitioner says that in deciding her sentence, the court "clearly relied upon the continued existence" of the ICC Program and the court might have rendered a different sentence had the court known the facts about the program. Petitioner claims the Due Process Clause does not allow the sentencing court to rely on incorrect information at sentencing.

Under 18 U.S.C. § 3621(b), the Bureau of Prisons has the authority to decide the place of the prisoner's imprisonment. "[A] district court has no power to dictate or impose any place of confinement for the imprisonment portion of the sentence. Rather, the power to determine the location of imprisonment rests with the Bureau of Prisons." *United States v. Serafini*, 233 F.3d 758, 778 n.23 (3d Cir. 2000). Specifically, placement in the boot camp program is within the "sound correctional judgment" of the Bureau of Prisons and depends upon the "availability of Bureau resources." 28 C.F.R. § 524.31(b). Consideration for placement in the ICC program is solely within the BOP's discretion. *Id.*, *Gissendanner v. Menifee*, 975 F.Supp. 249, 251 (W.D. N.Y. 1997). The district court makes only a recommendation on placement in prison

programs.

Petitioner does not claim that she had begun or completed any program orientation. There is no showing that she would have completed the rigorous program such that she would be entitled to the relief she seeks. 18 U.S.C. § 4046(b); 28 C.F.R. §§ 524.30, 524.32(a) ("eligible inmate ... must .. forego opportunities which may be otherwise available.... Opportunities may that may be affected include, .... visitation, telephone use, legal research time, religious practices, commissary, smoking, and grooming preferences").

The frustration of the intent of the sentencing court is not a basis for invalidating a sentence. *See United States v. Addonizio*, 442 U.S. 178, 187-88 (1979) (denying relief under section 2255 for a claim that a change in parole policies after sentencing enlarged custody beyond what the sentencing court intended). The Supreme Court also said that a prisoner's expectation that he would serve his sentence in a particular way is not a basis for collateral relief. *Id*. The Court distinguished cases allowing attacks on the sentence where the court relied on materially false information about a defendant's prior criminal record which underlay the sentence and where the substantive law concerning the conduct establishing the criminal offense changed after sentencing. *Id*., at 186-87 (citing *United States v. Tucker*, 404 U.S. 443 (1972) (defendant's prior record); *Davis v. U. S.*, 417 U.S. 333 (1974)(change in the law)).

Although our case involves allegedly present incorrect information (the non-availability of the ICC Program) and *Addonizio* involved future parole decisions, *Addonizio* informs the analysis here. Like the sentencing court in *Addonizio*, the lack of the fulfilment of the sentencing judge's intent, as claimed by Petitioner, concerning the potential placement in boot camp does not invalidate the sentence. The failure to fulfill the intent of the sentencing court concerning possible future events is not a due process violation. *Addonizio*, 442 U.S. at 190. The district court's sentence was and remains lawful. *Id*. at 186-87.

As a separate matter and of greater importance, to the extent Petitioner's due process claim has any validity, it belongs in a section 2255 motion in the sentencing court. Petitioner states her "sentenc[e] was based on misinformation." Petitioner's due process claim challenges the sentence. A challenge "directed toward the sentence itself ..... [is] cognizable only under 28 U.S.C. § 2255." *United States v. Gabor*, 905 F.2d 76, 78 (5th Cir. 1990). The cases cited by Petitioner and other cases discussing a claim that the sentence was based on misinformation were bought under 28 U.S.C. § 2255, or FED. R. CRIM. P. 32 or 35. *See, e.g., U.S. v. Tucker*, 404 U.S. 443 (remanding to the sentencing court to reconsider defendant's sentence in light of misinformation of constitutional dimensions, *i.e.*, a finding that two of defendant's prior convictions which were considered in sentencing were unconstitutional).

7

Petitioner must bring her due process claim challenging her sentence in the sentencing court under a § 2255 motion. *United States v. Flores*, 616 F.2d 840, 842 (5th Cir.1980) ("appropriate remedy is under § 2255, not 28 U.S.C. § 2241, since the alleged errors occurred at or prior to sentencing"). The clerk of the sentencing court should present the motion to the judge who imposed the sentence. *See* Rules Governing section 2255 Proceedings in the United States District Courts, Rule 4(a).

## IV. THE *EX POST FACTO* CLAUSE

The focus in an *ex post facto* claim is on whether the change alters the definition of a crime or increases the punishment, not on whether there is some kind of disadvantage to the prisoner or affects his opportunity to take advantage of an early release program. *California Dept. of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995). In reviewing a challenge to a BOP regulation change and finding no *ex post facto* violation, the Fifth Circuit said it was "merely a categorical determination by the BOP that it will not exercise that discretion in the case of inmates with a prior conviction for certain specified crimes." *Wottlin v. Fleming*, 136 F.3d 1032, 1038 (5th Cir. 1998).

The *Wottlin* case involved a retroactively applied change in BOP policy which denied early release to prisoners who were convicted of certain violent offenses—it directly affected the possibility of a prisoner's release. Here, the change only affects

the acceptance into a cancelled discretionary program for which the prisoner's success in the program may allow him early release. In an unpublished opinion, the Fifth Circuit found no *ex post facto* violation where a BOP determination "merely deprived [the petitioner] of an opportunity to take advantage of a discretionary early-release provision." *Alexander v. Wendt*, 127 Fed.Appx. 695 (5th Cir. Apr. 1, 2005). *See* Fifth Circuit Rule 47-5.4 (citing *Wottlin*, 136 F.3d at 1037-38).

Petitioner also claims that beyond an *ex post facto* analysis, the BOP cannot cancel the ICC Program because this retroactively impinges on settled expectations, citing *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1998) and *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994). In some situations, federal agencies should not retroactively apply new rules. *Bowen*, 488 U.S. at 208. However, the holding in *Bowen* does not apply here to bar the BOP from cancelling a program based on its determination that the program is not effective and the money used to fund the program would be better spent elsewhere. In *Byrd v. Moore*, 252 F.Supp.2d 293 (W.D.N.C. 2003), cited by Petitioner, the settled expectations which were upset were that the petitioners already lived in a halfway house and they were challenging the BOP's decision cancelling the halfway house program and returning them to prison. Here, there are no such settled expectations.

Petitioner has not started the ICC Program. Furthermore, in *Moore* the BOP

cancelled the halfway house program based on their new legal interpretation that they had no authority to place petitioners in a halfway house.  Here, in contrast, the BOP cancelled the program based on ineffectiveness and cost.  The legal principle proscribing the retroactive use of modifications of the law embraced in *Landgraf* and *Bowen* does not apply here.

Petitioner's allegations do not show an *ex post facto* violation or inappropriate retroactive application of a BOP policy.

## V. CONCLUSION

Accordingly, it is ORDERED that this habeas corpus petition be DENIED for failure to state a claim on which relief may be granted.  All pending motions and requests for relief are DENIED as moot.

SIGNED at Houston, Texas, on this 28th day of November, 2005.

*David Hittner*
_____

DAVID HITTNER

United States District Judge